UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEBRASKALAND, INC., <br><br> Plaintiff/Counter-Claim Defendant <br><br> v. <br><br> RIVER STREET IDEALEASE, LLC, <br><br> Defendant/Counterclaimant. | Civil Action No.: 13-1270 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a Motion for Partial Summary Judgment filed by Defendant River Street Idealease, LLC ("River Street"). (ECF No. 47). Plaintiff Nebraskaland, Inc. ("Nebraskaland") has opposed this motion (ECF No. 50), and Defendant has replied to that opposition (ECF No. 53). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion for Partial Summary Judgment.

## BACKGROUND

Plaintiff Nebraskaland is a wholesale distributor of meat and frozen food products, with its principle place of business in the Bronx, New York. (ECF No. 47-3, Def.'s Statement of Undisputed Material Facts, "SOF" ¶¶ 2, 4). Nebraskaland utilizes refrigerated trucks to distribute its products to its clients in New York and the surrounding area. (ECF No. 17, Am. Compl. ¶ 5). Defendant River Street, with its principle place of business in Hackensack, New Jersey, is in the business of leasing commercial trucks, including refrigerator trucks, to distributors such as Nebraskaland. (*Id.* ¶¶ 2, 6). On January 4, 2011, Nebraskaland and River Street entered into a

1

Vehicle Lease and Service Agreement (the "Lease") in which it was agreed that Plaintiff would lease four vehicles from Defendant for a term of 72 months. (Compl. ¶ 7; SOF ¶ 10).

Among other provisions, the Lease identifies the responsibilities of each party with respect to the maintenance and repair of the vehicles. (*See* Am. Compl., Exh. A, the Lease). For example, paragraph 7 of the Lease identifies charges for which Nebraskaland will be held responsible, while paragraph 4 enumerates the services that River Street is to provide. (*Id.*). On January 23, 2013, prior to the expiration of the Lease term, River Street sent a letter to Nebraskaland which stated that Nebraskaland was in default of $15,665.73 and that accordingly, River Street had repossessed the leased vehicles pursuant to the terms of the Lease. (ECF No. 50-2, Certification of Stanley Marvel, "Marvel Cert.", Exh. A.). Thereafter, on January 25, 2013, Nebraskaland mailed a check for $15,665.73 allegedly owed to Defendant with an accompanying letter in which it reserved its "rights and remedies with respect to any disputed charges included in the total payment" and requested that Defendant immediately return the repossessed vehicles. (*Id.*, Exh. C; SOF ¶ 35).

According to Defendant, "once [River Street] had the Vehicles back in its possession, [River Street], for the first time, saw that Nebraskaland had caused extensive damage to the Vehicles" which allegedly included gouges and dents to the body of the trucks. (SOF ¶¶ 36-37). River Street states that damage to the vehicles totaled $7,116.42. (SOF ¶ 40). Notwithstanding its receipt of Plaintiff's check in satisfaction of River Street's January 23, 2013 demand letter, Defendant advised Plaintiff that it would not be returning the repossessed vehicles until it was reimbursed for the damage to those vehicles. (Am. Compl. ¶ 18; SOF ¶ 36-39). Nebraskaland did not pay the $7,116.42 demanded from Defendant, and on February 4, 2013, Nebraskaland declared River Street to be in default of the Lease on account of its failure to return the vehicles. (Am. Compl. ¶ 20).

Against this backdrop, on March 4, 2013, Plaintiff initiated the present action against Defendant. Specifically, Nebraskaland asserts claims for breach of contract (Count I), unjust enrichment (Count III), and a breach of the covenant of good faith and fair dealing (Count IV). Plaintiff also accuses River Street of unfair trade practices and fraud in violation of the New Jersey Consumer Protection Leasing Act ("CPLA") (Count V). Defendant, for its part, has asserted counter-claims against Plaintiff for breach of contract (Count I) and unjust enrichment (Count II). (ECF No. 18).

In addition to the above contract-based and CPLA claims, Plaintiff brings a tort claim in conversion (Count III) against Defendant. Plaintiff accuses Defendant of refusing to return the following property contained in the four repossessed vehicles: four GPS systems (alleged to be worth $2,000), four EZ Passes (alleged to be unlawful charged no less than $1,327.30 by Defendant's use), and fuel. (Am. Compl. ¶ 36).

On March 23, 2016, Defendant filed the instant Motion for Partial Summary Judgment. (ECF No. 47, "Def.'s Mov. Br."). Specifically, Defendant seeks dismissal of Plaintiff's CPLA claim (Count V) and a determination by this Court that Plaintiff is not entitled to recover any consequential or punitive damages with respect to any claims alleged. On April 18, 2016, Plaintiff filed an opposition to this Motion (ECF No. 50, "Pl.'s Op. Br.") and on May 5, 2016, Defendant filed a reply to same (ECF No. 53, "Def.'s Reply Br."). The Motion is now ripe for this Court's adjudication.

## **LEGAL STANDARD**

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 256 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). Moreover, "[i]n determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be entitled to view the evidence as a whole." *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 285 (3d Cir. 2001) (quoting entirely *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43, 249 ("At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## DISCUSSION

### A. Whether The Lease is Subject to the New Jersey CPLA

Defendant moves for summary judgment as to Plaintiff's claims for relief under the New Jersey CPLA. (Def.'s Mov. Br. at 9-16). Plaintiff alleges "[t]hat the failure and refusal of River Street to reinstate the Lease and return the vehicles after Nebraskaland paid the amount claimed and cured the alleged default, was an unfair trade practice proscribed by [the CPLA]." (Am. Compl. ¶ 53). River Street maintains that Plaintiff's CPLA-based claims do not stand as the Lease at issue is not within the purview of the CPLA. (*Id.*).

The CPLA was enacted by the New Jersey Legislature in 1995 to "establish[] requirements and standards for motor vehicle leases." *General Motors Acceptance Corp. v. Cahill*, 375 N.J. Super. 553, 556 (App. Div. 2005). The CPLA defines a "lease" as "a contract or other agreement between a lessor and a lessee, other than a fleet lease, a fair market value commercial lease, or a TRAC lease . . . for the use of a motor vehicle by the lessee for a period of time exceeding 120 days, whether or not the lessee has the option to purchase or otherwise become the owner of the motor vehicle at the expiration of the lease." N.J.S.A. § 56:12-61. Thus, the CPLA does not apply to every type of lease, and specifically excludes: (1) fleet leases, (2) fair market value commercial leases, or (3) TRAC leases—each of which is defined by the statute. *See id.*

River Street argues that the parties' Lease can be classified as both a fleet lease and a fair market value commercial lease and that it is therefore outside the purview of the CPLA. (Def.'s Mov. Br. at 12-16). If the Court finds that the Lease qualifies as a fleet lease or a fair market value commercial lease, then the Lease will not be the type of agreement that is subject to regulation under the CPLA, and Defendant will be entitled to summary judgment with respect to Plaintiff's CPLA claim (and accompanying damages) as a matter of law. Conversely, if the Court finds that the Lease is neither a fleet lease nor a fair market value commercial lease, then Plaintiff shall be permitted to move forward with its CPLA claim. The Court considers each argument, in turn.

      i.      **The Lease is Not a Fleet Lease**

The CPLA defines a "fleet lease" as "a contract or other agreement between a lessor and a lessee . . . in which the vehicles are to be used primarily for business or commercial purposes that is either: a written agreement for the use of at least two vehicles that includes an agreement for an **option to use at least one additional motor vehicle**; or a written agreement for the lease of five or more vehicles." N.J.S.A. § 56:12-61 (emphasis added). The parties do not dispute that the

vehicles leased by Plaintiff were to be used principally for business purposes. Nor can there be any dispute that the Lease pertains to "the use of at least two vehicles," as Schedule A to the Lease provides that Nebraskaland shall lease four vehicles. *Id.*; (Lease at 7).[1]  The parties do dispute, however, whether the Lease "includes an option to use at least one additional motor vehicle." N.J.S.A. § 56:12-61.

According to Defendant, Section 4.H of the Lease satisfies the requirement that the Lease provide for an option to use additional vehicles. (Def.'s Mov. Br. at 13). That provision, entitled "Additional Vehicles," states in in pertinent part:

> Lessor will use best efforts to furnish Additional Vehicles whenever requested by Customer **on a daily rental basis** as availability permits. The rate charged for the rental of additional vehicles owned by Lessor will be the same as the contract rate. In the event Lessor has no vehicles of the type requested, and at the direction of Customer, Lessor will use best efforts to obtain Additional Vehicles for Customer from alternative sources and Customer's rental cost shall be as per contract rate.

(Lease, § 4.H.) (emphasis added). According to Defendant, "[t]here can be no other meaning to Section 4.H of the Lease but to provide Nebraskaland the ability (that is, the option) to request additional vehicles from [River Street]." (Def.'s Reply Br. at 4).

Nebraskaland argues that Section 4.H does not create an agreement for an option to use additional vehicles. (Pl.'s Opp. Br. 14). Specifically, Plaintiff asserts that because the additional vehicles to be furnished are on a "daily rental basis," they are not a "lease" under the CPLA. (*Id.* at 16). That is, the CPLA defines a "lease" as an agreement "for the use of a motor vehicle by the lessee for a period of time exceeding 120 days." N.J.S.A. § 56:12-61.

In response, Defendant states that the definition of "fleet lease" does not contain a requirement that the "option to use additional vehicles" be for a lease of 120 days or more; rather, Defendant

---

[1] For the same reason, the parties do not contest whether the Lease is "a written agreement for the lease of five or more vehicles," which would require its classification as a "fleet lease." N.J.S.A. § 56:12-61.

6

takes the position that the fleet lease definition "merely requires that the Lease 'include[] an agreement for an option to use at least one additional motor vehicle'—which Section 4.H. clearly does." (Def.'s Reply Br. at 4). In other words, Defendant appears to argue that the definition's requirement that the lessee have an "option to *use*" rather than "option to *lease*" additional vehicles is satisfied by Plaintiff's option to request additional vehicles on a "daily rental basis." According to Defendant, the 120 day requirement only pertains to the underlying lease itself and not the option to use additional vehicles. (*Id.*).

There is little case law interpreting the CPLA, and the Court is unaware of any State or Federal case discussing the definition of a "fleet lease." Accordingly, the Court looks to the legislative history of the CPLA to determine whether the State Legislature would have considered Section 4.H. of the Lease to provide an "option to use additional vehicles."

Upon reviewing an earlier version of the CPLA, the Assembly Commerce and Regulated Professionals Committee Statement (the "Committee") "change[d] the definition of fleet lease to mean a contract for the use of more than one motor vehicle, instead of for the use of more than five motor vehicles, and to mean a contract which states the lessee's **option to lease** more than one motor vehicle." N.J.S.A. § 56:12-60 (Assembly Commerce and Regulated Professionals Committee Statement, Assembly No. 2277—L. 1994, c.190) (emphasis added). This Committee statement suggests that the drafters of the CPLA employed the words "use" and "lease" interchangeably in amending the definition of a "fleet lease." That is, the drafters clearly intended the definition of fleet lease to "mean a contract which states the lessee's option to **lease** [as opposed to merely use] more than one motor vehicle." *Id.* (emphasis added).

Moreover, a closer look at the final, statutory definition of "fleet lease" similarly indicates that the drafters intended the option to be for an option to "lease" additional vehicles. Once again, the

statute defines "fleet lease" as:

> a contract or other agreement between a **lessor and a lessee** . . . in which the vehicles are to be **used** primarily for business or commercial purposes that is either: a written agreement for the **use** of at least two vehicles that includes an agreement for an **option to use** at least one additional motor vehicle; or a written agreement for the **lease** of five or more vehicles.

N.J.S.A. § 56:12-61 (emphasis added).

First, that the very phrase defined is "fleet **lease**" suggests that the vehicles in question are to be "leased" rather than "used" in a more general sense. *Id.* (emphasis added). Similarly, implicit in the definition's reference to the "lessor and lessee" is the requirement that there exist an object to be leased—namely, "at least two vehicles" with an option to lease at least one more. In other words, although the Legislature chose the word "use" when discussing the first category of fleet leases ("at least two vehicles that includes an agreement for an option to use" more) and "lease" when discussing the second category of fleet leases ("agreement for the lease of five or more vehicles"), the Court does not construe the word "use" to have a meaning other than "lease."

Thus, in determining whether Section 4.H. of the instant contract contains an "option to use additional vehicles," N.J.S.A. § 56:12-60, the Court looks toward the CPLA's definition of a "lease." As already discussed, the CPLA defines a lease as an agreement to use a vehicle for a period exceeding 120 days. *Id.* at § 56:12-61. Section 4.H. of the Lease makes clear that, to the extent River Street is able to satisfy Nebraskaland's request for additional vehicles, those vehicles will be used on a "daily rental basis." Accordingly, the Court agrees with Nebraskaland that the Lease does not provide an "option to use at least one additional motor vehicle," as contemplated by the CPLA. N.J.S.A. § 56:12-61. Therefore, the Lease is not a "fleet lease" excluded from the CPLA.

### a. Nor is the Lease a Fair Market Value Commercial Lease

In addition to arguing that the Lease is a fleet lease excluded from the CPLA, Defendant argues that the Lease is a "Fair Market Value Commercial Lease" which is also specifically excluded from the CPLA. (Def.'s Mov. Br. at 14-16). The CPLA defines a fair market value commercial lease as "a contract or other agreement between a lessor and a lessee in which the vehicle is to be used primarily for business or commercial purposes and which provides an option for the purchase of the vehicle by the lessee from the lessor at its fair market value at the end of the lease term." N.J.S.A. § 56:12-61.

There is no dispute that Plaintiff was leasing vehicles primarily for commercial purposes. Additionally, Plaintiff does not dispute that pursuant to the Lease, Nebraskaland had the option to purchase the vehicle at the end of the lease term. (*See* Pl.'s Opp. Br. at 17). Section 11.A. of the Lease provides, in pertinent part: "If Lessor elects early termination, and provided Customer is not in violation of any of the terms and conditions of this Agreement, Customer shall have the right, but not the obligation, to purchase (on the termination date) in accordance with Section 11.F any Vehicle with respect to which termination notice has been given." (Lease, § 11.A). Thus, the only contested issue relevant to whether the Lease fits within the parameters of a fair market value commercial lease is whether Plaintiff would be required to purchase the vehicles at their fair market value.

Section 11.F., entitled "Purchase of Vehicles," governs the terms under which Nebraskaland may purchase the vehicles at the end of the Lease. Specifically, the Sections provides that:

> In the event [Nebraskaland], pursuant to this Article 11, shall be required, or shall have the option to, purchase any of the Vehicles, [Nebraskaland] shall purchase said Vehicles at or within the time aforesaid for an amount, payable in cash, **equal to the Original Value of each Vehicle, as shown on the applicable Schedule A, less the sum of the applicable Depreciation Credits earned during the term of this Agreement.**

9

(Lease, § 11.F) (emphasis added). According to Defendant, this formula for purchase price (Vehicle's Original Value minus the Vehicle's Depreciation) equals "the fair market value" and therefore satisfies the requirement of the fair market value commercial lease that the lease "provides for an option for the purchase of the vehicle by the lessee from the lessor at its fair market value at the end of the lease term." (Def.'s Mov. Br. at 15). On the other hand, Plaintiff argues that the purchase formula outlined in Section 11.F. does not provide that Plaintiff will purchase the vehicles at their fair market value, as it does not take into account such critical factors as the vehicle's odometer reading, mechanical condition or appearance. (Pl.'s Opp. Br. at 17).

The CPLA does not define "fair market value." However, case law counsels that the determination of a vehicle's fair market value is often a complicated process that implicates many factors. *See, e.g., Sema v. Automall 46 Inc.*, 384 N.J. Super. 145, 154 (N.J. Super. Ct. App. Div. 2006) ("As demonstrated by the conflicting expert testimony at the time of trial, there was no fixed standard, formula, or mathematical calculation available to determine the fair market value or retail value of the vehicle at the time of purchase."); *see also Vito's Towing, Inc. v. Kemp*, 279 N.J. Super. 414, 418 (N.J. Super. Ct. App. Div. 1995) (suggesting that vehicle's age and mileage may be relevant to the vehicle's re-sale value). Accordingly, the Court is not convinced that the formula provided in Section 11.F equates to the vehicle's fair market value.

Defendant argues that the parties are free to establish the formula for which they will determine the vehicle's fair market value. (Defs.' Reply Br. at 6). Yet nowhere in the Lease did the Defendant agree to sell or did Plaintiff agree to purchase the leased vehicles at the "fair market value." Nor has Defendant provided the Court with any evidence that the parties intended that the formula for purchase would amount to the vehicle's fair market value. Accordingly, and in light of the numerous factors that are typically considered when determining the fair market value of a

vehicle, the Court will not assume as much. Therefore, the Court finds that the Lease is not a fair market value commercial lease, as it does not provide Nebraskaland (as the lessee) with the option to purchase the vehicle at its fair market value. *See* N.J.S.A. § 56:12-61.

Having found that the Lease is neither a fleet lease nor a fair market value commercial lease, the Court finds that the Lease at issue is governed by the CPLA. As such, Defendant's Motion for Summary Judgment as to Plaintiff's CPLA claim and accompanying damages is denied.

## B. Whether Plaintiff is Contractually Barred from Seeking Consequential and Punitive Damages

The parties dispute whether Plaintiff is restricted, by the Lease terms, from seeking certain categories of damages. Pursuant to Section 5.O(5) of the Lease, the parties agreed that: "Under no circumstances shall [River Street] be liable for any consequential, special or other damages that any person may suffer or incur as a result of an interruption or cessation in the use of any Vehicle or arising from any maintenance or service provided by [River Street]." (Lease, § 5.O(5)). Defendant argues that this provision bars Nebraskaland from seeking consequential and special (which, according to Defendant, includes punitive) damages for any of the claims alleged. (Def.'s Mov. Br. at 17-18).[2]

### i. Calculation of Damages

---

[2] Defendant's reply brief states that Section 5.O(5) precludes Plaintiff "from seeking *any* damages" allegedly "caused by 'an interruption or cessation in the use of [the Vehicles].'" (Def.'s Reply Br. at 7 (emphasis added), quoting Lease, § 5.O(5) (alterations in original)). Thus, it appears that Defendant is now arguing that Plaintiff should be barred from seeking compensatory damages in addition to consequential and punitive damages. *See id.* However, Defendant's moving brief and proposed order indicated that River Street only moved to bar Plaintiff from seeking consequential and punitive damages. (ECF No. 47-4). Accordingly, the Court will not entertain the argument, raised for the first time in Defendant's reply brief, that Plaintiff should be barred from seeking any damages other than punitive or consequential damages. *See, e.g., Werner v. Werner*, 267 F.3d 288, 302 (3d Cir. 2001) ("A reply brief is like rebuttal— an opportunity for the appellant to 'reply' to arguments of the appellee, not to raise a new issue at a time when the appellee cannot respond."); *Goldsmith v. Camden Cnty. Surrogate's Office*, 408 N.J. Super. 376, 387 (N.J. Super. Ct. App. Div. 2009) ("[R]aising an issue for the first time in a reply brief is improper.") (quoting, in full, *Borough of Berlin v. Remington & Vernick Engr's*, 377 N.J. Super 590, 596 (App. Div.), *certif. denied*, 168 N.J. 294 (2001)).

11

Plaintiff's expert, Lawrence Feldman's January 19, 2015 report identifies the damages allegedly cause by Defendant's alleged breach of the Lease. (Pl.'s Opp. Br. at 3). The Feldman report states the total damages of $290,235.41, which according to Plaintiff, "includes damages in the amount of $25,875.49 caused by the unlawful repossession of the trucks and damages in the amount of $264,359.92, the cost of leasing substitute vehicles." (*Id.*). Specifically, the Feldman report identifies the following categories of damages sustained from Defendant's repossession of the vehicles:

> (1) the short-term rental of replacement trucks; (2) the value of personal property that was in the trucks when they were seized, including fuel, equipment, GPS systems and EZ passes (and charges incurred with respect to the GPS systems and EZ Passes after the trucks were repossessed; (3) the value of the unexpired term of the vehicles' registration; and, (4) approximately half of the $15,665.73 that Nebraskaland paid to River Street (under protest) to secure the release of the trucks.

(Pl.'s Opp. Br. at 3-4). Additionally, the Feldman report calculated the cost of leasing substitute vehicles by subtracting the lease price under the River Street contract from the lease price that Plaintiff paid for the substitute vehicles. (*Id.* at 4).

According to Plaintiff, "the quantification of these damages in the Feldman report (in the amount of $290.235.41) demonstrates that they are the direct result of River Street's breach of the Lease and are not consequential damages." (*Id.*). As the Lease does not specifically preclude Plaintiff from seeking direct damages, Nebraskaland argues that it is not barred from seeking these damages.

Plaintiff also seeks $13,275.49 with respect to its claim for conversion of the EZ passes, GPS systems, and fuel (Count II) that remained in the vehicles when repossessed by Defendant. (*Id.* at 4). Additionally, as to its claim for unjust enrichment (Count III), Nebraskaland seeks to recover that portion of the income generated by the four trucks that is in excess of the income that would have been generated under the Lease. (*Id.* at 5). Lastly, Plaintiff is requesting, pursuant to

12

the CPLA, three times the compensatory damages for River Street's breach of the Lease and attorney's fees. (*Id.*).

### C. Plaintiff is Prohibited from Seeking Consequential Damages with Respect to its Breach of Contract Claims

Defendant argues that the Lease terms prohibit Plaintiff from seeking consequential damages in this action. (Def.'s Mov. Br. at 17-18). In response, Plaintiff states that "Nebraskaland is not seeking damages for losses that are consequential or even arguably consequential such as lost profits, the loss of a customer, or damage to its reputation." (Pl.'s Reply Br. at 7). Given Plaintiff's representations that it is not seeking any consequential damages, Defendant's argument that Plaintiff should be barred from seeking same is moot. To the extent Plaintiff attempts to seek consequential damages with respect to its breach of contract claims in the future, Plaintiff shall be barred from doing so.

### D. Plaintiff May Seek Punitive Damages only With Respect to Its Tort Claim for Conversion of Personal Property

Pointing to Section 5.O(5) of the Lease, River Street argues that Plaintiff is barred as a matter of law from seeking punitive damages. (Def.'s Mov. Br. at 17-20). Section 5.O(5) prohibits Nebraskaland from seeking special (which, according to Defendant, encompasses punitive) damages. (*Id.* at 17). Moreover, Defendant maintains that the law does not permit Plaintiff to seek punitive damages with respect to its breach of contract claims. (*Id.* at 19). Finally, Defendant further argues that even if Plaintiff is not legally barred from seeking punitive damages, it has failed to show any egregious conduct on the part of Defendant to support the imposition of punitive damages. (*Id.* at 18-20).

The Court addresses each of these arguments, in turn. At the outset, aside from a parenthetical reference that the Lease "does not include the phrase 'punitive damages,'" Plaintiff does not

dispute Defendant's position that the Lease's exclusion of "special" damages includes punitive damages. (*See* Pl.'s Opp. Br. at 9). Accordingly, the Court will assume, for purposes of this Motion, that the Lease in fact prohibits Nebraskaland from seeking punitive damages with respect to its breach of contract claims. In any event, event absent this Lease provision, the Court agrees with Defendant that the law generally does not permit a plaintiff to recover punitive damages for breach of contract claims. *See Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 369-70 (1988) ("With rare exceptions, punitive damages are not available in an action for a breach of contract . . . and have been restricted to tort actions[.]" (internal quotations omitted)); *see also Jayme v. MCI Corp.*, 328 Fed. App'x. 768, 771, 2008 WL 3318998 (3d Cir. Aug. 12, 2008) (unpublished) ("Under New Jersey law, punitive damages for breach of contract generally are not recoverable.").

Apparently conceding that the Lease does, by its terms, prohibit the recovery of punitive damages and that the law generally bars collection of punitive damages for breach of contract claims, Nebraskaland argues that it's breach of contract claims, based upon the alleged wrongful repossession of the four vehicles, are (in essence) tort claims to which punitive damages can be assessed. (Pl.'s Opp. Br. at 9-10). Specifically, Plaintiff states that "River Street's actions described in the amended complaint are tortious, including its conversion of personal property and wrongful repossession and conversion of the leased trucks." (Pl.'s Opp. Br. at 9). Plaintiff cites case law for the proposition that the wrongful repossession of a vehicle may give rise to a tort claim for conversion. (*Id.* at 9-10). Thus, according to Plaintiff, "[s]ince the allegations in the complaint indicate that River Street committed various torts, including conversion and unlawful repossession, River Street's argument that punitive damages should not be imposed for its mere breach of contract, misses the mark." (*Id.* at 10).

Yet it is Plaintiff's argument that misses the mark. While the sole New Jersey court case cited

14

by Plaintiff, *Slowinski v. Valley Nat. Bank*, 264 N.J. Super. 172, 189-90 (N.J. Super. App. Div. 1993), suggests that a plaintiff may bring a tort claim for conversion based upon the unlawful repossession of a vehicle, Plaintiff has not done so here. Instead, Plaintiff has filed a tort claim for conversion (Count II) based solely upon Defendant's allegedly unlawful possession and retention of the personal property left in the vehicles at the time they were repossessed. (*See* Am. Compl. ¶ 36, alleging that "River Street converted to its own use property owned by the Plaintiff. The property converted consisted of four GPS systems, four EZ Passes, and fuel."). Plaintiff has not alleged a claim for conversion that is premised upon the alleged unlawful repossession of the vehicles.

Accordingly, the Court construes Plaintiff's claims of unlawful repossession in light of how those factual allegations are pleaded in the Complaint—namely, in the context of its breach of contract and CPLA claims.[3] As Plaintiff has not disputed that the Lease, by its terms, prohibits its recovery of punitive damages for breach of the Lease, the Court agrees with Defendant that Plaintiff may not seek recovery of punitive damages with respect to Nebraskaland's contract-based claims.

That said, Plaintiff is not precluded from seeking punitive damages as to its tort claim for conversion of personal property left in the repossessed vehicles. As to Defendant's argument that Plaintiff has failed to offer any facts that rise to the level of egregiousness necessary to support an award of punitive damages (Def.'s Mov. Br. at 20), the Court finds that question is better reserved for a jury's determination.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted in

---

[3] Notably, Plaintiff does not seek punitive damages under the CPLA.

part and denied in part. The Court denies Defendant's Motion for Summary Judgment with respect to Plaintiff's claims under the New Jersey CPLA and damages flowing therefrom. The Court grants Defendant's Motion baring Plaintiff from seeking consequential and punitive damages arising out of its breach of contract claims; however, Plaintiff will be permitted to seek punitive damages with respect to its tort claim for conversion of personal property (Count II). An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: May 18, 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE